IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| ANTHONY SIMMONS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 120-017 |
| | * | |
| AUGUSTA AVIATION, INC., a | * | |
| Georgia Corporation; DANIEL | * | |
| GATES, Individual Georgia | * | |
| Citizen; CHRIS WILSON, | * | |
| Individual Georgia Citizen; | * | |
| COASTAL AIR, INC.; and DOES 1- | * | |
| 20, | * | |
| | * | |
| Defendants. | * | |

O R D E R

Before the Court are Defendants Augusta Aviation, Inc., Daniel Gates, Chris Wilson, and Coastal Air, Inc.'s ("Defendants") motion to dismiss the amended complaint (Doc. 34) and Plaintiff's motion for leave to file a second amended complaint[1] (Doc. 50). For the following reasons, Plaintiff's motion is **GRANTED** and Defendants' motion is **DENIED AS MOOT**.

---

[1] Plaintiff titles the motion as one "for Leave to Amend Plaintiff's First Amended Complaint," seemingly to avoid confusing this amendment with the free-standing complaint on the docket entitled "Second Amended Complaint" (Doc. 42). Within note 2, *infra*, the Court explains it does not consider the stand-alone complaint. Thence, the Court analyzes the complaint attached to Plaintiff's pending motion as the Proposed Second Amended Complaint (Doc. 50-1).

## I. BACKGROUND

On or about January 15, 2018, Plaintiff Anthony Simmons ("Plaintiff"), a California resident, contacted Defendant Augusta Aviation, Inc. ("Augusta Aviation") inquiring about the condition of an aircraft ("Aircraft") advertised on Defendant Augusta Aviation's website. (Proposed Second Amended Compl., Doc. 50-1, ¶¶ 6, 16, 17.) Plaintiff spoke with Defendant Augusta Aviation's employee, Defendant Wilson. (Id. ¶¶ 8, 17.) Defendant Wilson "represented that the aircraft owner was Defendant Gates." (Id. ¶ 20.) At a later date, but before Plaintiff took possession, Defendant Gates told Plaintiff he owned the Aircraft. (Id. ¶ 44.) After purchasing, however, Plaintiff discovered "Defendant Gates was not the registered owner of the Aircraft." (Id. ¶ 31; see also id. ¶ 48.) Defendant Coastal Air, Inc. ("Coastal") was the Aircraft's registered owner, and Defendant Gates was Defendant Coastal's President. (Id. ¶¶ 9, 46.) Defendant Coastal's listing with the Georgia Secretary of State, however, reflected the company's dissolution on August 24, 2017. (Id. ¶ 47.) Further, Defendant Coastal was incorporated in Delaware, but its "entity status with the Delaware Secretary of State was forfeited for failing to appoint a registered agent." (Id. ¶¶ 10, 47.)

After negotiating the sale of the Aircraft, Defendant Wilson sent Plaintiff an amended and signed Aircraft Purchase/Sales Agreement, which Plaintiff executed. (Id. ¶¶ 36-37; see id. ¶¶ 22-

2

23, 25-26, 29, 34-35.) Only Plaintiff and Defendant Gates signed the Aircraft Purchase/Sales Agreement. (Id. ¶¶ 36-37; see id. ¶ 23.) As part of the sale, "Defendant Augusta Aviation completed an 'annual/100[-]hour inspection' of the "Aircraft's airframe, engine, and propeller." (Id. ¶¶ 23, 39.) There was no report "of any corrosion or any other airworthiness issues." (Id. ¶ 42.) Defendants did not provide Plaintiff a copy of the Aircraft Bill of Sale, which listed "Defendant Coastal as the Aircraft's registered owner and signed by Defendant Gates as [its] President." (Id. ¶ 46.)

On March 6, 2018, Plaintiff traveled to Defendant Augusta Aviation in Augusta, Georgia; took possession of the Aircraft; and flew it back to California. (Id. ¶¶ 7, 44, 45.) Thereafter, issues with the Aircraft became known to Plaintiff of a serious enough nature that "[h]ad [he] known the true condition of the Aircraft[,] he would not have purchased it." (Id. ¶ 58.) Plaintiff then "made repeated demands and extended multiple offers for Defendants to take back the [A]ircraft and refund Plaintiff's purchase price and repair costs. Each of Plaintiff's demands and offers have been rejected." (Id. ¶ 61.)

On November 14, 2019, Plaintiff filed suit in the Northern District of California (Compl., Doc.. 1) and, six days later, filed the Amended Complaint (Am. Compl., Doc. 6) as a matter of course. See FED. R. CIV. P. 15(a)(1)(A). On January 24, 2020, the then-

3

presiding Judge ordered the case to be transferred to this district. (Transfer Order, Doc. 26.) On February 13, 2020, Defendants moved to dismiss the complaint. (Defs.' Mot. to Dismiss, Doc. 34.) Plaintiff then filed an amended complaint as a stand-alone entry on the docket (Doc. 42) but on April 13, 2020, appropriately filed a motion for leave to amend attaching the Proposed Second Amended Complaint.[2] (Pl.'s Mot. for Leave to Am. Compl., Doc. 50; Proposed Second Amended Compl.) The time to respond to both motions has expired, and the motions are ripe for consideration.

## II. DISCUSSION

The Court addresses (A) Plaintiff's motion for leave to amend and (B) Defendants' motion to dismiss.

### A. Motion for Leave to Amend

The proposed amendment does not qualify as one to be filed as a matter of course. See FED. R. CIV. P. 15(a)(1). Thus, Federal Rule of Civil Procedure 15 directs that Plaintiff may only amend with Defendants' "written consent or the [C]ourt's leave. The [C]ourt should freely give leave when justice so requires." Id. 15(a)(2). District courts are given "extensive discretion" to decide whether allowing an amended complaint is proper. Campbell

---

[2] The free-standing amended complaint (Doc. 42) is different than the Proposed Second Amended Complaint attached to Plaintiff's motion (Doc. 50-1). The Court considers only the Proposed Second Amended Complaint attached to Plaintiff's motion.

v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999) (citation omitted). In exercising its discretion, the Eleventh Circuit has set forth five factors for the court to consider: (1) "undue delay," (2) "bad faith or dilatory motive on the part of the movant," (3) "repeated failure to cure deficiencies by amendments previously allowed," (4) "undue prejudice to the opposing party by virtue of allowance of the amendment," and (5) "futility of amendment." Seiger ex rel. Seiger v. Philipp, 735 F. App'x 635, 637 (11th Cir. 2018) (quoting Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1241 (11th Cir. 2009) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962))). "Unless[, however,] there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." Burger King Corp. v. Weaver, 169 F.3d 1310, 1319 (11th Cir. 1999) (citation omitted). Absent "undue delay, bad faith, dilatory motive or undue prejudice, leave to amend is routinely granted." Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1405 (11th Cir. 1994) (citing, among others, Foman, 371 U.S. at 182).

Plaintiff urges the Court to grant him leave to amend because the Proposed Second Amended Complaint "addresses and alleviates all of the issues regarding Plaintiff's claims that Defendants raise in their [m]otion to [d]ismiss." (Pl.'s Mot. for Leave to Am., at 10.) Defendants do not argue the first four factors

5

support denying Plaintiff leave but oppose the granting of leave to amend as futile. (Defs.' Resp. Opp'n Mot. for Leave to Am., at 1, 3.)

> The Eleventh Circuit has determined that "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004) . . . . To determine if the proposed amendment is still subject to dismissal, a court accepts the facts pleaded in the proposed amended complaint as true and construes them in the light most favorable to the plaintiff. See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc., 376 F.3d 1065, 1077 (11th Cir. 2004). It appears that a court may also consider evidence outside of the complaint when reviewing a motion for leave to amend. See Thomas v. E.I. DuPont de Nemours & Co., 574 F.2d 1324, 1325 n.1 (5th Cir. 1978) ("Since our decision rests on the failure of the District Court to allow amendment of the complaint, consideration of the facts in appellant's affidavit is legitimate."); U.S. Fire Ins. v. United Limousine Serv., Inc., 303 F. Supp. 2d 432, 445 (S.D.N.Y. 2004) (reviewing affidavit to determine whether to grant plaintiff leave to amend the complaint).

Hall v. One Point Fin. LLC, No. 1:09-CV-1458-WBH-AJB, 2009 WL 10669420, at *2 (N.D. Ga. Nov. 24, 2009) (some internal citations omitted).

In a three-page response, Defendants first challenge the entire Proposed Second Amended Complaint as a "shotgun pleading." (Defs.' Resp. Opp'n Mot. for Leave to Am., at 1-2.) Second, Defendants analyze the new count brought in the Proposed Second Amended Complaint — Count 6 — attempting to show it fails to state a claim. (Id. at 2-3.) Lastly, Defendants claim the "[Proposed] Second Amended Complaint is subject to dismissal on grounds

6

previously brought to the attention of Counsel for Plaintiff in this Court and in the United States District Court for the Northern District of California." (Id. at 3.)

1. Shotgun Pleading

First, the Proposed Second Amended Complaint does not fail as a shotgun pleading because it sufficiently delineates what acts are charged against each Defendant. Courts consider a complaint to be a shotgun pleading when it "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321-22 (11th Cir. 2015). It is commonplace, however, for complaints to include a paragraph initiating new counts that incorporates the previous allegations. This practice is only banned when there are not additional allegations under each count that "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1294-95 (11th Cir. 2018) (quoting Weiland, 792 F.3d at 1323). Here, each count of the Proposed Second Amended Complaint does not rest alone on the incorporating allegation but includes specific arguments, references supporting facts, and where available, delineates the actors accused of taking specific actions. (See, e.g., Proposed Second Amended Compl., ¶¶ 64-69, 72-75, 78-80, 82-

7

98, 102-03, 110-25.) It is true that, at times, Plaintiff accuses all Defendants collectively as having taken an action or violated a specific law. (Defs.' Resp. Opp'n Mot. for Leave to Am., at 1-2.) This, however, does not make the Proposed Second Amended Complaint a shotgun pleading when the majority of Plaintiff's factual allegations specify an actor and only refer to Defendants collectively when, based on their individual actions, Defendants are all allegedly guilty of assisting in the same unlawful conduct. Cf. Brown v. Ala. Dep't of Corr., No. 2:19-CV-91-WKW, 2019 WL 4780801, at *3 (M.D. Ala. Sept. 30, 2019). (Compare Proposed Second Amended Compl., ¶¶ 16-23, 25-41, 43, 44, 47, 50-53, with id. ¶¶ 24, 42-43, 45-46, 48, 54-57, 61-62.)

2. New Count Six

Second, Defendants seem to argue Plaintiff's Georgia Uniform Trade Practices Act ("Trade Act") claim fails under shotgun pleading rules. (Defs.' Resp. Opp'n Mot. for Leave to Am., at 2.) According to Defendants, Plaintiff brings his Trade Act claim without specifying which of the deceptive practices he accuses Defendants of committing because he fails to cite the applicable subsections of the Trade Act. (Id.) The Trade Act makes twelve actions unlawful. O.C.G.A. § 10-1-372(a)(1)-(12). Although the Proposed Second Amended Complaint does not cite the subsection numbers Plaintiff accuses Defendants of violating, Plaintiff quotes or paraphrases the allegedly applicable subsections of

8

O.C.G.A. § 10-1-372. (See Proposed Second Amended Compl., ¶¶ 161-63 (quoting or paraphrasing O.C.G.A. § 10-1-372(a)(1), (3), (5), (12)).) Thus, Defendants' first challenge is unfounded.

Defendants also challenge Count six as to Plaintiff's claim under Georgia's Fair Business Practices Act of 1975 ("Business Act"). (Defs.' Resp. Opp'n Mot. for Leave to Am., at 2-3.) According to Defendants, the Business Act "provide[s] a private right of action[] but only if the *ante litem* notice provisions have been complied with." Id. at 2 (citing O.C.G.A. § 10-1-399(b)).) Defendants conclusively state Plaintiff fails to allege notice in accordance with the statute, but then acknowledge the Proposed Second Amended Complaint "does contain a new allegation found in paragraph sixty-one" "[a]s to the required [a]nte [l]item command": "Plaintiff has made repeated demands and extended multiple offers for Defendants to take back the aircraft and refund Plaintiff's purchase price and repair costs. Each of Plaintiff's demands and offers have been rejected." (Id.) Citing no case law, Defendants state, "This vague allegation does not set forth to whom it was sent, whether it was written or oral and what the notice contained. It is not sufficient." (Id. at 3.) This unsupported and conclusory argument by Defendants is insufficient to find Plaintiff failed to plausibly meet the notice requirement as a matter of law at this stage in the preceding. See Welch v. Citibank, N.A., No. 1:15-cv-3618-CAP-CMS, 2016 WL 11567853, at *7

9

(N.D. Ga. Sept. 8, 2016) (stating the issue of whether the plaintiff complied with the *ante litem* notice requirement of Section 10-1-399(b) "appears better suited for resolution on a motion for summary judgment than a motion to dismiss"), *adopted by* 2016 WL 11568943 (Sept. 28, 2016).

### 3. Previous Arguments

Third, the Court analyzes arguments Defendants previously made that have yet to be addressed. Rather than repeating the arguments, Defendants cite to the relevant page numbers in their motion to dismiss — "3, 7-8, 9."[3] (Defs.' Resp. Opp'n Mot. for Leave to Am., at 3.) Through the Proposed Second Amended Complaint, Plaintiff intends to alleviate all genuine issues Defendants raised in their motion to dismiss. The Court now determines whether Plaintiff succeeded.

#### a. *Count 1*

On pages three and four of Defendants motion to dismiss, Defendants challenge Count 1, which raised a claim of rescission and restitution or, alternatively, revocation against all Defendants. (Defs.' Br. Supp. Mot. to Dismiss, at 3, 4.) Plaintiff partially agreed with Defendants' opening challenge to

---

[3] In the remaining documents Defendants cite, they do not raise new arguments but repeat arguments or provide additional support for the arguments already raised in their motion to dismiss. The Court considers the supportive cites as needed. Furthermore, Defendants do not cite to their motion to dismiss arguments as to Count 2 presumably because Plaintiff agreed with Defendants and made the appropriate changes. (Defs.' Resp. Opp'n Mot. for Leave to Am., at 3.) (Compare Defs.' Br. Supp. Mot. to Dismiss, Doc. 34-1, at 5-7, with Pl.'s Resp. Mot. to Dismiss, Doc. 44, at 11.)

10

Count 1, which was: Defendants Augusta Aviation, Wilson, and Coastal Air "are not parties to the contract and were not the sellers who sold the airplane to . . . Plaintiff, [thus] no claim for rescission lies against them." (Id. at 4; Pl.'s Resp. Mot. to Dismiss, at 10-11.)  In the Proposed Second Amended Complaint, Plaintiff brings this claim only against Defendants Coastal Air and Gates.  (Proposed Second Amended Compl., ¶¶ 63-69.)  Although only Defendant Gates and Plaintiff signed the contract, Defendant Gates was Defendant Coastal's President.  Thus, a question remains as to the capacity Defendant Gates signed the contract, especially in light of evidence that Defendant Coastal was administratively dissolved prior to the sale but remained the registered owner.

Defendants also claim that Count 1 fails for lack of notice because "[t]he [Proposed Second] Amended Complaint is devoid of an allegation of a pre-suit demand to rescind the sale." (Defs.' Br. Supp. Mot. to Dismiss, at 4.)  As stated previously, however, the Proposed Second Amended Complaint includes paragraph [sixty-one], alleging Plaintiff repeatedly demanded that "Defendants . . . take back the aircraft and refund Plaintiff's purchase price and repair costs."  Defendants fail to show how, at this stage in the proceedings, this allegation is insufficient to sustain Plaintiff's rescission or revocation claim.[4]

---

[4] Although Defendants do not cite to challenges against Count 2, see supra note 3, the Court's decision as to Count 1 equally applies to Count 2.

11

b. *Counts 3 and 4*

On pages seven through eight of Defendants motion to dismiss, they argue Plaintiff's fraud and fraudulent concealment claims fail because Plaintiff alleges fraud "'against the defendants' without delineating what each defendant had done that was allegedly fraudulent." (Id. at 7-8.) Without repeating the Court's findings supporting the conclusion that the Proposed Second Amended Complaint is not a shotgun pleading, the Court finds that within Counts 3 and 4 and the factual allegation section of the Proposed Second Amended Complaint, Plaintiff attributes specific actions to individual defendants. (Proposed Second Amended Compl., ¶¶ 18, 20, 21-22, 24, 27-28, 30-33, 39-43, 46, 50-57, 77-107, 109-129.) As such, the Court finds Plaintiff did not "simply 'lump[] together' all . . . Defendants in their allegations of fraud." (Defs.' Br. Supp. Mot. to Dismiss, at 7 (citation omitted).)

c. *Count 5*

On pages eight through nine, Defendants also challenge Count 5, which claims all Defendants breached certain express and implied warranties. (Id. at 8-9.) Defendants first argue Count 5 is a shotgun pleading. (Id. at 8.) The Court previously denied this allegation and declines to repeat its findings here. Defendants then claim Plaintiff's breach claims fail because "[t]he lengthy [Proposed Second] Amended Complaint lacks any allegations of notice of breach sent by [Plaintiff] to the seller, [Defendant]

12

Gates. . . . As such, there can be no claim for breach of either implied or express warranties." (Id. at 9 (emphasis and internal citation omitted).) It is plausible that Plaintiff's demands outlined in paragraph sixty-one were conveyed to Defendant Gates. As such, the Court declines to find Plaintiff's breach of warranties claims fail at this stage.

### d. *Prior Count 6*

Finally, on page nine of their motion to dismiss, Defendants argue Plaintiff's claim brought under the California Unfair Business Practices Act is inapplicable, but Plaintiff agreed and removed this claim in his Proposed Second Amended Complaint. (Id.; see Pl.'s Resp. Mot. to Dismiss, at 13; see generally Proposed Second Amended Compl.)

After reviewing Defendants' previously made challenges, the Court finds amendment is not futile. For the foregoing reasons and because leave should be freely granted, the Court, in its discretion, allows Plaintiff to amend his complaint.

## B. Motion to Dismiss

The Court now turns to Defendants' motion to dismiss, which challenges Plaintiff's previously operative Amended Complaint. (See generally Defs.' Mot. to Dismiss.) "It is well-established that an amended complaint super[s]edes an original complaint and renders the original complaint without legal effect." Renal Treatment Ctrs.—Mid-Atl., Inc. v. Franklin Chevrolet-Cadillac-

Pontiac-GMC, No. 608CV087, 2009 WL 995564, at *1 (S.D. Ga. Apr. 13, 2009) (quoting In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir. 2005)) (citing Fritz v. Standard Sec. Life Ins. Co. of N.Y., 676 F.2d 1356, 1358 (11th Cir. 1982)); accord Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint."). Here, Plaintiff's Second Amended Complaint supersedes his Amended Complaint. Accordingly, Defendants' motion to dismiss is moot.

## III. CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's motion for leave to file a second amended complaint (Doc. 50) is **GRANTED** and Defendants' motion to dismiss (Doc. 34) is **DENIED AS MOOT**. Plaintiff **SHALL** file his Second Amended Complaint (Doc. 50-1) as a stand-alone entry on the docket within **FIVE (5) DAYS** from the date of this Order.

**ORDER ENTERED** at Augusta, Georgia, this 10th day of September, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA