## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

ANTHONY SIMMONS,                     *
                                     *
      Plaintiff,                  *
                                     *
           v.                  *        CV 120-017
                                     *
AUGUSTA AVIATION, INC.;              *
DANIEL GATES; CHRIS WILSON;          *
COASTAL AIR, INC.; and DOES          *
1-20,                                *
                                     *
      Defendants.                 *

-----

## O R D E R

-----

Before the Court is Defendants Daniel Gates ("Gates") and Coastal Air, Inc.'s ("CA") (collectively, the "Seller Defendants") motion for summary judgment (Doc. 62), Defendants Chris Wilson ("Wilson") and Augusta Aviation, Inc.'s ("AA") (collectively, the "Airport Defendants") motion for summary judgment (Doc. 66), Defendants' motion to strike portions of Mark Baird's Affidavit (Doc. 82), Defendants' motion to strike portions of Steve Loree's affidavit (Doc. 83), and the Airport Defendants' motion to strike Plaintiff's first amended response to their motion for summary judgment (Doc. 84). For the following reasons, the summary judgment motions (Docs. 62, 66) are **GRANTED**, the motion to strike Plaintiff's first amended response (Doc. 84) is **GRANTED**, the motion to strike portion of Mr. Loree's Affidavit (Doc. 83) is **GRANTED**,

and the motion to strike portions of Mr. Baird's Affidavit (Doc. 82) is **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND

Plaintiff originally filed suit in the Northern District of California, and the matter was transferred to this District on January 31, 2020. (Doc. 27.) After a few previous versions, Plaintiff filed his operative Second Amended Complaint on September 14, 2020. (2d Am. Compl., Doc. 55.) In the Second Amended Complaint, Plaintiff asserts seven claims for relief against the above-named Defendants. Specifically, Plaintiff asserts: (1) Rescission and Restitution; Alternatively, Revocation of Acceptance – Against CA and Gates; (2) Breach of Contract – Against CA and Gates; (3) Fraud – Against all Defendants; (4) Fraudulent Concealment – Against all Defendants; (5) Breach of Warranties – Against all Defendants; (6) Violation of Georgia Uniform Fair Trade and Deception Act – Against all Defendants; and (7) Violation of California Unfair Business Practices Act – Against all Defendants. (Id. at 11-33.)

Before providing an overview of the underlying facts, the Court must first address an issue regarding the statement of undisputed material facts ("SUMF"). For summary judgment motions, the Local Rules require:

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, in addition to the brief, there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof.   Each statement of material fact shall be supported by a citation to the record.   All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party.

L.R. 56.1, SDGa.   The Defendants argue their SUMF (Docs. 62-2, 66-2) should be deemed admitted because Plaintiff did not file a response to such.   (Doc. 73, at 7; Doc. 80, at 4.)   However, Plaintiff filed his own SUMF in response to both motions for summary judgment (Docs. 70-4; 76).   While other districts, such as the Northern District of Georgia, require the opposing party to file an individually numbered response to the movant's SUMF, this District's Local Rules are not that explicit.   As stated in Local Rule 56.1, facts are deemed admitted "unless controverted by a statement served by the opposing party." L.R. 56.1, SDGa.   "This District's rule does not define what constitutes a 'statement,' nor can the Court locate a case doing so.   Absent more direct guidance, the Court declines to import the Northern District's language requiring of such a statement individually numbered responses to a SUMF." Ratchford v. F.D.I.C., No. 6:11-CV-107, 2013 WL 2285805, at *4 (S.D. Ga. May 23, 2013).   Based on this holding, to the extent Plaintiff's SUMF and responses controvert

Defendants' SUMF, the Court will not deem Defendants' SUMF admitted. However, if Plaintiff failed to controvert any aspects of Defendants' SUMF, those facts will be deemed established as a matter of law. See id.

With that matter clarified, an overview of the underlying facts is as follows. In January 2018, Plaintiff, a California resident, contacted Defendant AA after seeing an online advertisement for a 1980 Piper Arrow aircraft (the "Aircraft") for sale. (2d Am. Compl., at 3.) Plaintiff spoke with Defendant Wilson who advised that the Aircraft was owned by Defendant Gates but had been maintained by Defendant AA since 2013 and was in great condition, airworthy, and safe for flight. (Id. at 3-4.) Defendant Wilson explained that Defendant AA would conduct an annual/pre-purchase inspection on the Aircraft prior to the completion of the sale. (Id. at 4.) After several conversations with Defendant Wilson and the acceptance of his offer by Defendant Gates, Plaintiff signed the Aircraft Purchase/Sales Agreement ("the Agreement") on January 26, 2018. (Doc. 1-1, at 5-7.) Defendant Wilson then sent an "updated" version which Plaintiff subsequently executed on January 30, 2018. (Id. at 2-4.) The only Parties to the Agreement were Defendant Gates and Plaintiff. (Id.)

Plaintiff represents he was never advised he could choose a facility other than Defendant AA to perform the pre-purchase

inspection (2d. Am. Compl., at 4); however, the Agreement states "[t]he pre-purchase inspection mechanic shall be the Buyer's exclusive decision, so long as the mechanic possesses a current Airframe and Powerplant mechanic certificate issued by the Federal Aviation Administration ["FAA"]. The pre-purchase inspection *shall be performed at*: Augusta Aviation, Inc. located at KDNL Airport." (Doc. 1-1, at 3) (emphasis added). Therefore, "the contract provided for the airplane to have a fresh annual, that is an annual inspection conducted immediately prior to the sale" and "for the buyer to have a right to have the airplane inspected by a qualified aircraft maintenance firm." (Doc. 62-1, at 1.) Plaintiff consented to Defendant AA performing the inspection; however, he now states since he was an inexperienced aircraft purchaser, he did not know any better than to rely on Defendant AA. (Id.; 2d Am. Compl., at 5-6.)

Defendant AA completed an annual/pre-purchase inspection pursuant to the Agreement. (2d Am. Compl., at 7.) The inspection included the Aircraft's airframe, engine, and propeller and was made in accordance with the Federal Aviation Regulations ("FARs"). (Id.) Based on the inspection, the Aircraft was approved as being in airworthy condition by Steven Gay, who holds a FAA inspection authorization. (Id. at 7-8; Gay Decl., Doc. 65, at 3.) In March 2018, Plaintiff traveled to Augusta, Georgia, met with Defendant Gates, and took possession of the Aircraft. (2d Am. Compl., at 8;

5

Doc. 70, at 8.)  Sometime after the purchase, Plaintiff discovered that the Bill of Sale filed with the FAA indicated Defendant CA owned the Aircraft and was listed as the "Seller."  (Doc. 70, at 5.)   Upon investigation, Plaintiff determined Defendant CA had forfeited its corporate status in Delaware and was administratively dissolved in Georgia.  (Id. at 6.)

Plaintiff operated the Aircraft in the San Francisco Bay area for a year before it was due for its annual inspection.   (Doc. 62-2, at 4.)  When due, Plaintiff took the Aircraft to Mr. Baird, a FAA-certified mechanic, who found corrosion on the engine mount and the use of zip ties for hoses and ducts, which he believed rendered the Aircraft unairworthy.  (Doc. 70, at 9.)  Plaintiff then engaged Loree Air, Inc., a FAA-certified welding repair station to addresses the corrosion damage.  (Id.)  Mr. Loree was of the opinion that the corrosion damage had been there for several years.  (Id.)

Based on the annual inspection, Plaintiff's prior counsel, Mr. John T. Van Geffen, sent a demand letter to Mr. Gay, Defendant Wilson, Mr. Runnels, and Defendant Gates on May 31, 2019 (the "May 31, 2019 Letter").  (Doc. 62-3, at 21-23.)  Whether this letter was actually received by the Defendants is subject to dispute. Nevertheless, the letter provided that there were issues with the Aircraft, alleged misrepresentations through the sale, and demanded "$25,000.00 to settle and resolve any and all outstanding

claims." (Id. at 23.) Subsequently, Mr. Van Geffen exchanged emails with Mr. Bell, who was representing the Airport Defendants, from July through September of 2019 about repair costs and various totals Plaintiff was seeking for rescission. (Doc. 73, at 9-11.) Without reaching an agreement, Plaintiff filed suit in the Northern District of California on November 14, 2019 (Doc. 1) and it was transferred to this District on January 30, 2020 (Doc. 26).

## II. MOTIONS TO STRIKE

Defendants move to strike portions of the affidavit of Mark Baird and the affidavit of Steve Loree. (Docs. 82, 83.) "An affidavit submitted in connection with a summary judgment motion is subject to a motion to strike if it does not meet the standards set forth in Federal Rule 56." Passmore v. Travelers Cas. and Surety Co., No. 2:19-CV-0059, 2020 WL 5880720, at *4 (S.D. Ga. Oct. 2, 2020) (citing Story v. Sunshine Foliage World, Inc., 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000)). Rule 56 provides: "[a]n affidavit or declaration used to . . . oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). "If an affidavit 'fails to properly support an assertion of fact or fails to properly address another party's assertion of fact' by not complying with the requirements of Rule 56(c), then the Court

may disregard the content of the affidavit and consider any facts the affidavit contradicts as 'undisputed for purposes of the motion.'" Passmore, 2020 WL 5880720, at *4 (quoting FED. R. CIV. P. 56(e)(2)).   "When an affidavit submitted in support of, or opposition to, a motion for summary judgment contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit and consider the rest." Story, 120 F. Supp. 2d at 1031 (citation omitted).

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

"As the Supreme Court recognized in Daubert v. Merrell Dow Pharms., Inc., [509 U.S. 579, 589 (1993)], Rule 702 plainly contemplates that the district court will serve as a gatekeeper to the admission of [expert] testimony." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003).   "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown

8

by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

The Eleventh Circuit has explained that district courts are to engage in a three-part inquiry to determine the admissibility of expert testimony under Rule 702. Quiet Tech., 326 F.3d at 1340. Specifically, the court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. at 1340-41 (citations omitted).

First, an expert may be qualified to testify due to his knowledge, skill, experience, training, or education. Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (citation omitted). "A witness's qualifications must correspond to the subject matter of his proffered testimony." Anderson v. Columbia Cnty., No. CV 112-031, 2014 WL 8103792, at *7 (S.D. Ga. Mar. 31, 2014) (citing Jones v. Lincoln Elec. Co., 188 F.3d 709, 723 (7th Cir. 1999)). However, an expert's training need not be narrowly tailored to match the exact point of dispute. McDowell v. Brown, 392 F.3d 1283, 1297 (11th Cir. 2004).

Second, the testifying expert's opinions must be reliable. In Daubert, the Supreme Court directed district courts faced with

the proffer of expert testimony to conduct a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93. There are four factors that courts should consider: (1) whether the theory or technique can be tested, (2) whether it has been subject to peer review, (3) whether the technique has a known or potential rate of error, and (4) whether the theory has attained general acceptance in the relevant community. Id. at 593-94. "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citation omitted). For example, experience-based experts need not satisfy the factors set forth in Daubert. See United States v. Valdes, 681 F. App'x 874, 881 (11th Cir. 2017) (affirming admission of testimony from expert identifying firearms based upon years of experience working with firearms). However, "[t]he inquiry is no less exacting where the expert 'witness is relying solely on experience' rather than scientific methodology." Summit at Paces, LLC v. RBC Bank, No. 1:09-cv-03504, 2012 WL 13076793, at *2 (N.D. Ga. May 22, 2012) (quoting FED. R. EVID. 702, advisory committee's notes to 2000 amendment)). Bearing in mind the diversity of expert testimony,

"the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

Regardless of the specific factors considered, "[p]roposed testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590. In most cases, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." FED. R. EVID. 702, advisory committee's notes to 2000 amendment. "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough" to carry the proponent's burden. Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1113 (11th Cir. 2005). Thus, "if the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation omitted) (alterations in original).

Third, expert testimony must assist the trier of fact to decide a fact at issue. The Supreme Court has described this test as one of "fit." Daubert, 509 U.S. at 591. To satisfy this

requirement, the testimony must concern matters beyond the understanding of the average lay person and logically advance a material aspect of the proponent's case. Id.; Frazier, 387 F.3d at 1262. Yet, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63. At times, expert testimony is required in contract interpretation to "clarify or define terms of art, science, or trade." See TCP Indus., Inc. v. Uniroyal, Inc., 661 F.2d 542, 549 (6th Cir. 1981). Using these standards, the Court will address Defendants' motions in turn.

## A. Mark Baird Affidavit

Defendants move to strike paragraphs four, five, six, seven, eight, and nine of Mr. Baird's Affidavit (Doc. 75, at 33-35). (Doc. 82.) Most of these paragraphs set forth opinions as to how long corrosion had existed on the engine mount without any methodology or explanation as to how the opinion was reached. (Id. at 2.) Defendants argue "[t]he issue of calculating the age of corrosion is not a simple matter" and Mr. Baird's reports "lack the necessary sworn support required by [Rule 56(e)]." (Id. at 2-3.) In rebuttal, Plaintiff argues Mr. Baird qualifies under Federal Rule of Evidence 702 as a witness to testify about the corrosion of the Aircraft. (Doc. 89, at 2.) Specifically, Plaintiff argues Mr. Baird qualifies as an expert on aircraft

maintenance and repair generally, and regarding his personal inspection of the Aircraft, based on his knowledge, skill, experience, training, and education as an airplane mechanic, mechanic instructor, and appraiser. (Id. at 4.) Mr. Baird is a FAA-certified mechanic, and personally performed an inspection of the Aircraft in April 2019. (Id. at 5.)

The Court finds the determination of how long corrosion has existed, as well as at what point corrosion makes an aircraft unairworthy, requires more specific expert testimony than has been provided by Mr. Baird. Although a certified FAA mechanic, nothing in his background and experience alludes to knowledge on metallurgy. He points to previous reports in the log entries that corrosion had existed on the plane; however, these logs show corrosion was found in various areas over the years, none of which include the engine mount, and every time it was discovered, they treated and repainted it; it was not ignored. (Doc. 89-2, at 21-30.) The Court is not persuaded that based on his experience performing appraisals and maintenance on airplanes Mr. Baird can accurately determine how long corrosion has been present on this Aircraft, and Plaintiff did not support this conclusory allegation with any additional evidence. While true that an expert's experience need not be narrowly tailored to match the exact point of dispute, in this instance the Court finds Mr. Baird's training, knowledge, and experience is insufficient to opine on how long

corrosion existed on this Aircraft.   Based on this, the Court **GRANTS** Defendants' motion and strikes paragraphs four, five, six, seven, and eight of Mr. Baird's Affidavit (Doc. 75, at 33-35) to the extent they refer to the "longstanding corrosion" and his opinion as to how long the corrosion existed.  (Doc. 82.)  As to paragraph nine, the Court finds no reason to strike this assertion as it is unrelated to any expert opinion and simply provides a recount of what Mr. Baird did in contacting the FAA.   Therefore, as to paragraph nine, Defendants' motion to strike (Doc. 82) is **DENIED.**

## B. Steve Loree Affidavit

Defendants also move to strike paragraph fifteen of Mr. Loree's Affidavit (Doc. 75, at 39).   (Doc. 83.)   This paragraph "sets forth [his] opinion as to the duration of corrosion without establishing the methodology or the expertise necessary to render such opinion and because the term 'long periods of time' is too indefinite."  (Id. at 1.)  Plaintiff again rebuts this, arguing Mr. Loree is a certified FAA welder and "he believes the corrosion he observed had likely formed on the Aircraft's engine mounts long before Plaintiff purchased it."  (Doc. 90, at 7.)

Following the same analysis set forth above, the Court is not satisfied Mr. Loree can opine on the timeline of the corrosion. While in possession of many welding certifications, Plaintiff does not illustrate how Mr. Loree's welding background, training, and

experience makes him capable to determine how long corrosion has been present on the Aircraft.   Mr. Loree's statements are conclusory and have no analytical support; so they do not satisfy the requirements of Rule 702.   Based on this, the Court strikes paragraph 15 of Mr. Loree's Affidavit and Defendants' motion is **GRANTED**.   (Doc. 83.)

### III. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, motions for summary judgment are granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a).   "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."   Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)).   The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor."   United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and

citations omitted).  The Court should not weigh the evidence or determine credibility.  <u>Anderson</u>, 477 U.S. at 255.

The Defendants here do not bear the burden of proof at trial, and therefore may "satisfy [their] initial burden on summary judgment in either of two ways."  <u>McQueen v. Wells Fargo Home Mortg.</u>, 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115-16 (11th Cir. 1993)).  First, the Defendants "may simply show that there is an absence of evidence to support the [Plaintiff's] case on the particular issue at hand."  <u>Id.</u>  (citation omitted).  If this occurs, Plaintiff "must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."  <u>Id.</u>  (citation omitted).  Or second, Defendants may "provide affirmative *evidence* demonstrating that the [Plaintiff] will be unable to prove its case at trial.  <u>Id.</u> (citation omitted and alterations in original).

As explained above, the Local Rules require the movant to include a statement of undisputed material facts with its motion. <u>See</u> L.R. 56.1, SDGa.  "Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions."  <u>Preis v. Lexington Ins. Co.</u>, 508 F. Supp.

2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the Parties have specifically cited and legal arguments they have expressly advanced. See id.

In this action, the Clerk of Court provided Plaintiff notice of the summary judgment motions, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 64, 67.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Plaintiff responded to both motions for summary judgment (Docs. 70, 75) and the Defendants replied (Docs. 73, 80, 81).[1] The time for filing materials has expired, the issues have been thoroughly briefed, and the motions are now ripe for consideration. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in the case.

---

[1] On August 4, 2021, Plaintiff filed an amended response to the Seller Defendants' motion for summary judgment. (Doc. 74.) Plaintiff's response was due on July 16, 2021 pursuant to Local Rule 56.1. See L.R. 56.1, SDGa. The Seller Defendants therefore move to strike the amended response, arguing Plaintiff never sought leave and it was untimely. (Doc. 84.) Plaintiff did not respond. Upon due consideration, the Court **GRANTS** Seller Defendants' motion (Doc. 84) and the Court will not consider Plaintiff's amended response (Doc. 74).

## IV. SUMMARY JUDGMENT MOTIONS

Both sets of Defendants move for summary judgment on all of Plaintiff's claims. (Docs. 62, 66.) The Court will address their arguments below, organized by the individual claims in the Second Amended Complaint.

## A. Claim One - Rescission and Restitution; Alternatively, Revocation of Acceptance – Against Seller Defendants

The Seller Defendants move for summary judgment on Plaintiff's claim of rescission based on a lack of any pre-suit demand for rescission or notice of revocation of acceptance. (Doc. 62-1, at 6-7.) Further, Defendant CA argues it is not a party to the contract so a claim for rescission cannot be brought against it. (Id. at 6.) Plaintiff argues the May 31, 2019 letter his former counsel, Mr. Van Geffen, sent to the Seller Defendants constituted written demand for rescission of the agreement. (Doc. 70, at 15.) Further, he argues the Seller Defendants admitted to such in their answer to Plaintiff's initial complaint and through Mr. Bell's email on September 13, 2019. (Id. at 16.) The Seller Defendants insist the May 31, 2019 letter and the September 13, 2019 email are insufficient to meet the statutory requirements for notice. (Doc. 73, at 3-4.)

O.C.G.A. § 11-2-608 provides:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it: . . .

18

> (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

This requires notice to be given to the seller for revocation to be effective and for revocation to occur "before any substantial change" which is not caused by the defect. Id.

Preliminarily, the Seller Defendants' answer to Plaintiff's original complaint is irrelevant because the original complaint is no longer the operative pleading, so the Court does not acknowledge that argument. See Proctor & Gamble Def. Corp v. Bean, 146 F.2d 598, 601 n.7 (5th Cir. 1945) ("The original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." (citation omitted)). Further, the complaint mentions nothing about a pre-suit rescission, so the answers simply show the Defendants acknowledging a prayer for rescission in the complaint. (See Doc. 6, at 12; Doc. 33, at 5.)

As to the May 31, 2019 letter, the Parties debate whether it was ever received by the relevant Defendants; however, even assuming it was, the letter mentions nothing about rescission or revoking acceptance. (See Doc. 62-3, at 21-23.) "Repudiation of the contract by a party entitled to rescind is a condition

precedent to bringing an action for rescission." James v. Terex USA, LLC, No. 5:16-cv-60, 2018 WL 6028705, at *4 (S.D. Ga. Nov. 16, 2018) (citing Owens v. Union City Chrysler-Plymouth, Inc., 436 S.E.2d 94, 96 (Ga. Ct. App. 1993)); see also Gibson v. Alford, 132 S.E. 442, 448 (Ga. 1926) ("If a party to a contract seeks to avoid it on the grounds of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he cannot avoid or rescind such contract."). The May 31, 2019 letter states it is a "demand of $25,000.00 to settle and resolve any and all outstanding claims" and that if the offer is not accepted, Plaintiff "will be seeking an amount far in excess of this settlement offer to account for [Plaintiff's] avionics expenses, repair costs and legal fees." (Doc. 62-3, at 23.) The Seller Defendants assert this did not constitute notice of revocation of acceptance or a demand for rescission and the Court agrees. Nothing in the letter even implies that Plaintiff is seeking rescission of the Agreement.

Plaintiff additionally argues that on September 13, 2019, Mr. Bell admitted in an email exchange that he understood the May 31, 2019 letter to be a demand for rescission. (Doc. 70, at 16.) However, Plaintiff takes this conversation out of context and only attaches a snippet of the email conversation to his filing. (Doc.70-2, at 2.) Upon reading more of the attorneys' exchange (Doc. 73, at 9), it is clear that on September 6, 2019, Mr. Van

Geffen notified Mr. Bell that Plaintiff was "seeking rescission and restitution on the aircraft purchase contract" and that Mr. Bell acknowledged such statement on September 13, 2019. (Id.) Nothing in the exchange references the May 31, 2019 letter. (See id.) However, this email exchange is still insufficient because at the time of the exchange, Mr. Bell was representing the Airport Defendants, not the Seller Defendants. (Id. at 5.) This is the only other evidence Plaintiff points to in support of his pre-suit notice. Based on this, there is insufficient evidence from which a jury could find Plaintiff made a pre-suit demand as required by O.C.G.A. § 11-2-608; therefore, the Seller Defendants are entitled to summary judgment as to claim one and Plaintiff waived his right to rescind the Agreement. See Napier v. Kearney, 855 S.E.2d 78, 81 (Ga. Ct. App. 2021) ("In order to effect a rescission, the purchaser must act promptly and adhere to the intent to rescind or risk waiver of his claim[.]" (citation omitted)).

## B. Claim Three - Fraud - Against all Defendants

As to the fraud allegations, the Seller Defendants argue there is no evidence of fraud and the merger clause set out in paragraph 12 of the Agreement bars any claims against them for antecedent fraud. (Doc. 62-1, at 9-10.) The Airport Defendants assert the same, as well as an argument that Plaintiff's "Second Amended Complaint fails to plead with required precision the elements of any alleged fraud" by them. (Doc. 66-1, at 5-6.) Plaintiff

disagrees, arguing the merger clause does not defeat his claims because they "are based on Defendant Gates' written warranty that the Aircraft was in airworthy condition with Plaintiff purchased it." (Doc. 70, at 17.)  He specifically refers to paragraph 5 of the Agreement.  (Id.)  As to the Airport Defendants, Plaintiff argues they made false misrepresentations and omissions of material fact about the Aircraft by representing that it was airworthy and safe to fly which was actionable fraud under Georgia law. (Doc. 75, at 13-14.)  Specifically, he "contends that the Aircraft was not in airworthy condition when he purchased it, and he further contends that Defendant Gates and Defendant Wilson knew, or reasonably should have known, that it was not, and deliberately failed to disclose that fact to him." (Doc. 70, at 17.)

The Court will first address the arguments regarding the Agreement's merger clause and how it affects Plaintiff's claims. Paragraph 12 of the Agreement provides:

> This Agreement constitutes the entire Agreement between the parties.  No statements, promises, or inducements made by any party to this Agreement or any agent or agent or employees of either party, which are not contained within this written contract shall be valid or binding. This Agreement may not be enlarged, modified, or altered unless writing is signed by both parties.

(Doc. 1-1, at 4.)  The Court is satisfied this paragraph contains an "entire agreement" clause which "operates as a disclaimer, establishing that the written contract completely and comprehensively represents all of the parties' agreement and thus

bars [plaintiff] from asserting reliance on the alleged misrepresentations not contained within the contract." Kobatake v. E.I. DuPont De Nemours and Co., 162 F.3d 619, 625 (11th Cir. 1998) (quoting Pennington v. Braxley, 480 S.E.2d 357, 359 (Ga. Ct. App. 1997)) (internal quotations omitted). Based on this, "prior marketing or sales materials cannot be incorporated into a contract" because the Agreement, by its terms, constitutes the entire agreement between the Parties. Pure Bioscience v. Ross Sys., Inc., No. 07-CV-1117, 2008 WL 938956, at *5 (S.D. Ca. Apr. 7, 2008) (citing Webster v. Sensormatic Elec. Corp., 389 S.E.2d 15, 16 (Ga. Ct. App. 1989)). Plaintiff clarifies that his fraud claims "are based on paragraph 5 of the Agreement, which specifically provides that Defendant Gates guaranteed that the Aircraft was in airworthy condition when Plaintiff purchased it." (Doc. 70, at 17.) Paragraph 5 states in relevant part:

> The Aircraft will be delivered to Buyer in its present condition, normal wear and tear excepted, with a valid FAA Certificate of Airworthiness. Seller warrants that: (a) the aircraft is in airworthy condition; (b) the aircraft has a current annual inspection (completed during the pre-purchase inspection); (c) the aircraft has a currently effective Standard airworthiness certificate issued by the Federal Aviation Administration; (d) all of the aircraft's logbooks are accurate and current; (e) all applicable Airworthiness Directives have been complied with; (f) FAR 91.411 and 91.413 checks were completed and passed during Pre-purchase/Annual inspection.

(Doc. 1-1, at 3 (emphasis removed).) Plaintiff argues "the Aircraft was not in airworthy condition when he purchased it."

(Doc. 70, at 17.)   Since Defendant Gates is the only Defendant bound by the Agreement, Plaintiff may only bring claims against him for the alleged fraud.   Any statements made before the Agreement was executed are excluded from Plaintiff's fraud claim by the merger clause.   See Kobatake, 162 F.3d at 626 ("[W]here the allegedly defrauded party affirms a contract which contains a [merger clause] and retains the benefits, he is estopped from asserting that he has relied upon the other party's misrepresentation and his action for fraud must fail." (citation omitted)).

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." Napier, 855 S.E.2d at 81 (citation omitted).   Plaintiff was not prompt in his attempt to rescind the contract, so he waived his right to proceed under the second option.   Therefore, his only option is to affirm the contract and seek damages from the fraud.   To prove fraud by Defendant Gates, Plaintiff "must establish five elements: (1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff." Engelman v. Kessler, 797 S.E.2d 160, 166 (Ga. Ct. App. 2017) (citation omitted).

As to element one, Plaintiff argues the aircraft was not in "airworthy condition" at the time of the sale, so Defendant Gates' statement of such in paragraph 5 of the Agreement was false. (Doc. 70, at 17.) The determination of whether it was airworthy in March 2018, when the sale took place, is the subject of dispute. Defendant Gates states he "had never been made aware of any corrosion on the engine mount" or "any improper use of zip ties in the engine compartment" and he believed his airplane "to have been airworthy and in good condition on the date of sale." (Gates Decl., Doc. 62-4, ¶¶ 4, 10-11.) Plaintiff simply argues "the Aircraft was not in airworthy condition when he purchased it" and Defendant Gates "knew, or reasonably should have known" it was not, and failed to disclose such information to him. (Doc. 70, at 17.) Plaintiff relies on an April 2019 inspection by FAA-certified mechanic Mr. Baird who determined the present corrosion and zip ties made the Aircraft unairworthy. (Simmons Decl., Doc. 70-1, ¶¶ 35-37.) However, the Court has struck his opinion as to how long the corrosion had been present because of his lack of experience in the field of metallurgy and lack of support for his opinion. Plaintiff points to no additional evidence as to how the zip ties made the Aircraft unairworthy beyond Mr. Baird's conclusory statement. Plaintiff also offers Mr. Loree's opinion on the corrosion on the Aircraft. (Id. ¶ 38-39.) Based on these two affidavits, Plaintiff's allegation is that in April 2019, a year

after purchasing the Aircraft, it was no longer airworthy. However, there is no evidence to prove that at the time of the sale, the Aircraft was not airworthy. Rather, the undisputed evidence is that at the time of the sale, the Aircraft "had a fresh annual approved by [a FAA authorized inspector], had a certificate of airworthiness and was, in fact, fully airworthy." (Gay Decl., at 3.) Further, Mr. Gay states "[i]t is common to use zip ties in the engine compartment of piston-powered airplanes," he has even "seen zip ties used on brand new piston-powered airplanes," and such use "does not render single-engine airplanes unairworthy." (Id.) The Plaintiff, at no point, moves to exclude Mr. Gay's statements or his verification of the airworthiness of the Aircraft at the time of the sale and only provides conclusory statements in an attempt to discredit his contentions. Because Defendant Gates has shown an absence of evidence to support Plaintiff's claim of fraud, Plaintiff is required to rebut Defendant's evidence by showing that the record contains supporting evidence sufficient to withstand a directed verdict, or by proffering evidence sufficient to withstand a directed verdict motion based on the alleged evidentiary deficiency. He has failed to do so. See McQueen 955 F. Supp. 2d at 1262 (citation omitted).

Based on this, the Court finds no reason to address the remaining elements of fraud because there is insufficient evidence from which a jury could find Plaintiff proved fraud by Defendant

Gates.   Therefore, Defendant Gates, as well as all other Defendants, are entitled to summary judgment on claim three.

## C. Claim Four – Fraudulent Concealment – Against all Defendants

"A buyer who alleges fraudulent concealment must prove [the] same five elements [as fraud], including, as a factor of justifiable reliance, that he or she could not have discovered the alleged defect in the exercise of due diligence." Meyer v. Waite, 606 S.E.2d 16, 20 (Ga. Ct. App. 2004) (citation omitted). "While questions of due diligence often must be resolved by the trier of fact, that is not always the case. One may fail to exercise due diligence as a matter of law." Id. (quotation and citation omitted). Having already established Plaintiff did not sufficiently prove a claim of fraud, Defendants are also entitled to summary judgment on claim four.

## D. Claim Two – Breach of Contract – Against Seller Defendants

Plaintiff argues that if the Agreement is not rescinded for fraud, in the alternative, the Seller Defendants are in breach of the Agreement because they delivered the Aircraft in an unairworthy condition with undisclosed liens. (2d Am. Compl., at 12-13.) The Seller Defendants assert they are entitled to summary judgment on this claim because none of Plaintiff's allegations even address conduct by Defendant Gates before the sale, only that of AA employees. (Doc. 62-1, at 8.) Further, Plaintiff again did not provide adequate notice of breach of contract to Defendant Gates

which is a mandatory precondition to suit. (Id.) Plaintiff asserts Defendant Gates materially breached and failed to perform the Agreement because he claimed he owned the Aircraft at the time of the sale, yet evidence shows CA owned it. (Doc. 70, at 21.) He believes Defendant Gates could not convey clear title, which was a material breach of and a failure to perform the Agreement and he now elects to rescind the Agreement and collect damages. (Id. at 22.)

Under O.C.G.A. § 11-2-607(3)(a), "[w]here a tender has been accepted: . . . [t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" The purpose of this notice provision is two-fold. First, express notice facilitates settlement through negotiation between parties. Wal-Mart Stores, Inc. v. Wheeler, 586 S.E.2d 83, 86 (Ga. Ct. App. 2003). Second, notice reduces prejudice to the seller "by giving him ample opportunity to cure the defect, inspect the goods, investigate the claim or do whatever may be necessary to properly defend himself or minimize his damages while the facts are fresh in the minds of the parties." Id. (citation omitted). "The question of reasonableness of notice is ordinarily a factual one, although summary adjudication is appropriate if the uncontroverted facts establish that a plaintiff is not entitled to recover." Int'l

Multifoods Corp. v. Nat'l Egg Prods., Div. of Hudson Foods, Inc., 414 S.E.2d 253, 256 (Ga. Ct. App. 1991) (citation omitted).

Preliminarily, the Court will address Plaintiff's contentions about the title of the Aircraft.  The Agreement was entered between Plaintiff and Defendant Gates.  (Doc. 1-1.)  Defendant Gates "claim[ed] that he owned the Aircraft when he sold it to Plaintiff and that he conveyed clear title to Plaintiff." (Doc. 70, at 21.) However, the evidence shows that Defendant CA, a dissolved entity, actually owned the Aircraft, which is reflected on the bill of sale filed with the FAA.  (Id.)  Plaintiff argues that based on this, clear title was not conveyed to him, which is a breach of the Agreement.  (Id. at 22.)

The Seller Defendants call attention to the fact that there is no contention clear title was not given, because Plaintiff did receive title unencumbered by any liens.  (Doc. 73, at 3.)  The 2010 Aircraft Registration with the FAA identifies Defendant CA as the "Registered Owner" and Defendant Gates signed the registration as the "President." (Doc. 70-4, ¶ 17.)  Plaintiff does not dispute that Defendant Gates was the sole shareholder of Defendant CA. (Doc. 73, at 3.)  "Upon dissolution of a close corporation with one shareholder, the dissolved corporation's assets immediately transfer to the sole shareholder." In re Hudson, No. 09-75394, 2010 WL 4638596, at *1 (N.D. Ga. Sept. 24, 2010) (citing Byers v. Black Motor Co., 16 S.E.2d 478 (Ga. Ct. App. 1941)).  Based on

29

this, Defendant Gates was capable and legally authorized to sell the Aircraft as if it was his own, because it was. Plaintiff therefore received clear title, so this is not a basis for rescinding the agreement.

Plaintiff does not rebut Defendant Gates' contention about a lack of pre-suit notice with regards to his breach of contract claim. (See Doc. 70, at 20-21.) His response simply focuses on case law to show he has a right to revoke or rescind upon a breach of contract. (Id.) Based on this, Plaintiff failed to provide any evidence he gave pre-suit notice of a breach of contract and his claim therefore procedurally fails.

Out of an abundance of caution, the Court will assume that Plaintiff is again relying on his May 21, 2019 letter to constitute notice. However, this letter is insufficient because it does not mention any issues with the title of the Aircraft. (See Doc. 62-3.) Even assuming the letter was received, which is disputed, based on the Court's finding that Plaintiff provided insufficient evidence that the Aircraft was unairworthy at the time of sale, there is no basis for breach of contract. Accordingly, the Seller Defendants are entitled to summary judgment on claim two.

## E. Claim Five - Breach of Warranties – Against all Defendants

Plaintiff also asserts claims for breach of express warranty, implied warranty of fitness for a particular purpose, and implied warranty of merchantability against all Defendants. (2d Am.

Compl., at 22-26.)   The Defendants argue Defendant Gates was the only one in privity with Plaintiff through the Agreement and privity is required to impose liability under express or implied warranties.  (Doc. 62-1, at 11; Doc. 66-1, at 8.)

Here, none of Plaintiff's evidence establishes notice was given to Defendant Gates, nor was an opportunity for him to cure any alleged breach of warranty.  (Doc. 62-1 at 12.)   Plaintiff agrees that privity is required, and that Defendant Gates was in privity with Plaintiff.  (Doc. 70, at 18.)  Based on this, summary judgment is granted to Defendants CA, AA, and Wilson on claim five and the Court will analyze the claim only as to Defendant Gates. Plaintiff rebuts Defendant Gates' other assertions, arguing he has established all of the elements necessary to maintain his claims against Defendant Gates.  (Id. at 18-19.)

1. <u>Implied Warranties of Merchantability and Fitness for a Particular Purpose</u>

Under Georgia law, unless explicitly stated otherwise, "warranties of merchantability and fitness for a particular purpose are implied in contracts for the sale of goods." <u>Laibe Corp. v. Gen. Pump & Well, Inc.</u>, 733 S.E.2d 332, 334 (Ga. Ct. App. 2012) (citing O.C.G.A. § 11-2-314(1); O.C.G.A. § 11-2-315).  "To be merchantable, goods must meet several criterion including being able to '[p]ass without objection in the trade under the contract description' and being 'fit for the ordinary purposes for which

such goods are used.'" <u>Whitaker v. Excel Indus.</u>, 512 F. Supp. 3d 1375, 1381 (S.D. Ga. 2021) (citing O.C.G.A. § 11-2-314(a), (c)). To prove an implied breach under Georgia law, a plaintiff must prove four elements: "(1) that the goods were subject to the warranty; (2) that the goods were defective; (3) that the injury was caused by the defective goods; and (4) that damages were incurred as a result." <u>Id.</u> (citing <u>Mitchell v. BBB Servs. Co.</u>, 582 S.E.2d 470, 471-72 (11th Cir. 2003)) (internal quotation marks omitted).  Plaintiff contends the Aircraft, as delivered, was not airworthy, which violated the implied warranty of merchantability. (2d Am. Compl., at 25-26.)  However, for this type of claim, the seller must be "a merchant with respect to goods of that kind." <u>Paulk v. Thomasville Ford Lincoln Mercury, Inc.</u>, 732 S.E.2d 297, 302 (Ga. Ct. App. 2012) (citation omitted).  Pursuant to O.C.G.A. § 11-2-104, a merchant is "a person who deals in goods of the kind" or "holds himself out as having knowledge or skill peculiar to the practices or goods involved."  There are no allegations that Defendant Gates was a merchant in the business of airplanes, and no evidence provides such.  To the contrary, the evidence represents that this was a casual private transaction, and that neither Mr. Gates nor Mr. Simmons were business professionals in the realm of airplanes. <u>Cf. Bostik, Inc. v. Rogers Finishing, LLC</u>, No. 4:08-cv-0119, 2009 WL 10668651, at *8 (N.D. Ga. Dec. 28, 2009) (finding a buyer is considered a merchant "where the

purchaser is a business professional as opposed to a casual or inexperienced seller or buyer, and the purchase involves a type of goods related and necessary to the business or occupation of the purchaser".) Based on this, there is insufficient evidence that an implied warranty of merchantability existed, and Defendant Gates is entitled to summary judgment on claim five as it relates to a breach of implied warranty of merchantability.

As to the implied warranty of fitness for a particular purpose, plaintiff must prove: "(1) the seller had reason to know the particular purpose for which the buyer required the goods, (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish appropriate goods, and (3) the buyer in fact relied upon the seller's skill or judgment." In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig., No. 1:13-md-2495, 2017 WL 2501755, at *7 (N.D. Ga. June 9, 2017) (citation omitted).   Plaintiff alleges the Aircraft did not meet his expectations of being "airworthy" or his expectations of who was the actual owner of the Aircraft.  (2d Am. Compl., at 24-25.)  As to the owner, that issue is discussed below and cannot be said to have affected the particular purpose for which Plaintiff required the Aircraft.  However, as to the "airworthy" contention, this relates to Plaintiff's earlier allegation that despite the FAA Airworthy certification, he believes the Aircraft was not airworthy when he purchased it based on the presence of corrosion

and zip ties found during an inspection a year after purchase. (Id.) As the Court found above, Plaintiff has not rebutted Defendants' contentions of airworthiness with sufficient evidence to avoid a directed verdict and therefore, there is insufficient evidence from which a jury could find Plaintiff proved a breach of implied warranty. Therefore, Defendant Gates is entitled to summary judgment on claim five as it relates to breach of implied warranty of fitness for a particular purpose.

### 2. Express Warranty

Defendant Gates argues Plaintiff's express warranty claim also fails because Plaintiff did not provide notice of the breach or an opportunity for him to cure any alleged breach of warranty. (Doc. 62-1, at 12.) Under Georgia law, a breach of express warranty requires (1) notice to the seller, and (2) a reasonable opportunity to cure the defect. O.C.G.A. §§ 11-2-605(1), 11-2-607(3)(a); Knight v. Am. Suzuki Motor Corp., 612 S.E.2d 546, 549 (Ga. Ct. App. 2005). Thus, breach does not occur until the seller refuses to remedy the defect within a reasonable time. Knight, 612 S.E.2d at 549.

Plaintiff relies on the May 31, 2019 letter to satisfy his notice requirement. (Doc. 70, at 18.) As noted above, there is disagreement as to whether Defendant Gates ever received this letter, but even assuming he did, there is no proof Plaintiff gave Defendant Gates any reasonable opportunity to cure the alleged

34

defects.  As the record stands, the letter notified him of issues and demanded $25,000.000 to settle and resolve the claims.  (See Doc. 62-3, at 23.)  Since Plaintiff does not provide any evidence that Defendant Gates refused to repair the airworthiness of the Aircraft, there is insufficient evidence from which a reasonable jury could find a breach of express warranty and Defendant Gates is entitled to summary judgment on claim five as it relates to breach of express warranty.

**F.  Claim Six - Violation of Georgia Uniform Fair Trade and Deception Act - Against all Defendants**

There is no "Georgia Uniform Fair Trade and Deception Act," so the Defendants assume Plaintiff is referring to either the Georgia Uniform Trade Practices Act ("GUTPA") or Georgia's Fair Business Practices Act ("GFBPA").  (Doc. 62-1, at 12; Doc. 66-1, at 8.)  Plaintiff's responses refer to the GFBPA, so the Court will analyze this claim under O.C.G.A. § 10-1-390, *et seq.*  (See Doc. 70, at 19; Doc. 75, at 15.)

To maintain a cause of action under the GFBPA, a plaintiff must give notice at least thirty days prior to filing suit. O.C.G.A. § 10-1-399.  Defendants argue that no *ante litem* notice sufficient to meet the statutory requirements was provided.  (Doc. 62-1, at 13; Doc. 66-1, at 9.)  Plaintiff argues the notice requirements of the GFBPA are to be liberally construed and that his May 31, 2019 demand letter satisfies the statutory

requirements.  (Doc. 70, at 19-20; Doc. 75, at 15-16.)  Defendants argue this is insufficient notice, and even if it was, the GFBPA does not regulate isolated transactions between two people.  (Doc. 73, at 5-6; Doc. 80, at 8.)  Plaintiff did not respond to Defendants' reply briefs.

"[T]he stated intent of the [G]FBPA is to protect the public from acts and practices which are injurious to consumers, not to provide an additional remedy for private wrongs which do not and could not affect the consuming public generally." Zeeman v. Black, 273 S.E.2d 910, 913 (Ga. Ct. App. 1980) (citation omitted). "One may bring a private suit under the [G]FBPA only if he is individually injured by the breach of a duty owed to the consuming public in general." Id. at 914.  In determining whether a defendant's alleged wrongful acts violate the GFBPA, "two factors are determinative: (a) the medium through which the act or practice is introduced into the stream of commerce; and (b) the market on which the act or practice is reasonably intended to impact." Id. at 915 (quoting State of Ga. V. Meredith Chevrolet, Inc., 244 S.E.2d 15, 18 (Ga. Ct. App. 1978)).  In this case, as in Zeeman, the Court finds that the GFBPA does not apply because the transaction that took place does not qualify under these two factors.  Defendant Gates does not operate an ongoing business in which he holds himself out to the public generally.  "There is insufficient public interest in a single instance in which an owner

undertakes to sell his own property to invoke the [G]FBPA." <u>Id.</u> Based on the foregoing, without even addressing the notice requirements, the Court finds that Defendants are entitled to summary judgment on claim six.

## G. Claim Seven - Violation of California Unfair Business Practices Act - Against all Defendants

The Agreement provides it "is a contract executed pursuant to the laws of the State of Georgia" so the Defendants argue the contract and sale are not subject to any provisions of California law. (Doc. 62-1, at 13; Doc. 66-1, at 9-10.) Plaintiffs do not respond to this argument, and the evidence is clear that Georgia law controls the Agreement. Based on this, summary judgment is granted to all Defendants on claim seven.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Defendants' motions for summary judgment (Docs. 62, 66) are **GRANTED**, the motion to strike Plaintiff's first amended response (Doc. 84) is **GRANTED**, the motion to strike portion of Mr. Loree's Affidavit (Doc. 83) is **GRANTED**, and the motion to strike portions of Mr. Baird's Affidavit (Doc. 82) is **GRANTED IN PART and DENIED IN PART**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 21st day of March, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA